IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| TED ROBERTS, an individual, | ) ) ) | Case No. CV 05-472-S-EJL |
| Plaintiff, | ) ) ) ) | **MEMORANDUM DECISION AND ORDER** |
| v. | ) ) ) | |
| FEARLESS FARRIS SERVICE STATIONS, INC., an Idaho corporation; FEARLESS FARRIS SERVICE STATION, INC., THE DEFERRED COMPENSATION PLAN; FARRIS S. LIND; KENT F. LIND; H. KENT JOHNSON; CHARLEY JONES; and SHAWN DAVIS, individually and as Present or Former Administrators and Fiduciaries of the Fearless Farris Service Stations, Inc. | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Currently pending before the Court is Plaintiff's Motion to Compel Discovery (Docket No. 26), filed December 19, 2006. For the following reasons, this Motion will be denied.

# I.
# Background

Plaintiff Ted Roberts ("Plaintiff" or "Roberts") has brought this ERISA action against

Defendants Fearless Farris Service Stations, Inc. (herein "Stinker Station""), the Fearless Farris

**Memorandum Decision and Order - Page 1**

Station, Inc. Deferred Compensation Plan, Farris S. Lind, Kent F. Lind, H. Kent Johnson, Charley Jones and Shawn Davis (collectively, ""Defendants") to recover early retirement benefits.  Plaintiff last worked as a fuel tanker driver for Stinker Station and after 22 years of employment, was terminated on or about August 18, 2003.

Over the years, and at least since the early 1990's, Stinker Station developed a "plan" to provide retirement benefits for some of its employees.  Plaintiff alleges that there were about 30 employee members of this plan.  Discovery in this litigation has not produced any formal plan document as the plan evolved through the years by a series of announcements or letters from management to its employees.  For consistency, the Court will refer to this plan as the "Employee Plan."

Another, much more limited plan, also existed in this general time frame.  This plan has been referred to as a "key-man," "top-hat," "salary continuation agreements" or "deferred compensation plan," and eventually covered only the three owners/shareholders, Farris S. Lind, Kent F. Lind, and H. Kent Johnson.  Roberts agrees that he was never a participant in this plan or agreement.

Stinker Station was sold by Defendants Lind, Lind and Johnson (herein "Former Owners") to Defendants Jones and Davis (herein "New Owners"), in the fall of 2002.  In connection with this sale, the life insurance policies acquired on Lind, Lind and Johnson were signed over to these individuals.  At the time of the sale, it came to the attention of the parties that certain forms and reports had never been filed with the Internal Revenue Service.  In September of 2002, 5500 Forms, covering the years 1991-2002, were filed with the IRS.  The sale to the New Owners then proceeded to closing on November 18, 2002.  The insurance

policies covering the 30 employees, including Roberts, were transferred to the New Owners at the time of the sale.

Eight months after the sale, the New Owners cashed in the transferred policies and according to Plaintiff, received cash surrender value of approximately $600,000 which was deposited into the corporate bank account. On July 22, 2003, Plaintiff Ted Roberts and the other 29 members were notified that the Employee Plan had been discontinued. Roberts' employment was terminated about one month later on August 18, 2003.

Plaintiff alleges that by liquidating and distributing the insurance policies purchased to fund the Employee Plan benefits, the Employee Plan Fiduciaries (formerly, Defendants Lind, Lind and Johnson; currently, Defendants Jones and Davis) have breached a duty owned to Plaintiff and other plan participants. Plaintiff also alleges that as the Employee Plan has been terminated, he is entitled to lump sum distribution in the amount of the present value of his benefit under the plan. Because of the improper liquidation of the insurance policies, the Employee Plan is without assets and Plaintiff alleges that the Employee Plan Fiduciaries are liable for the misuse and loss of plan assets.

## II.
## Plaintiff's Motion to Compel

Plaintiff submits that no formal plan document has ever been produced by Defendants but documents referencing the Employee Plan have been provided as well as various communications describing variations and amendments to the Employee Plan over the years. In this Motion to Compel, Plaintiff is seeking any and all documentation related to any purported separate Deferred Compensation Plan (or similar benefit plan) for stockholders/managers (a "key-man" plan) as distinguished from the remainder of the workforce. During depositions of

**Memorandum Decision and Order - Page 3**

Defendants' outside accountant Kevin Anderson, reference was made to a purported plan for Defendants Lind, Lind and Johnson.  Upon request of documentation of this other plan, Defendants either said they knew of none or were refusing to provide the same on request of counsel.  Mr. Anderson, when deposed, said he had some information relative to this plan for stockholders, could not remember any details of it and that he had been directed by defense counsel not to produce it.  In Exhibit No. 24 attached to Mr. Anderson's deposition, two pages which refer to a purported separate deferred compensation plan for shareholders/managers were unilaterally redacted by Defendants.

Plaintiff urges that one of the issues in determining the rights of the parties is whether the Employee Plan was or was not a "top-hat plan."[1]  Some of the factors determinative of a "top-hat plan" are (1) the job description of the workforce; and (2) the level of compensation of the workforce included and excluded.  Plaintiff maintains that the data and documents sought through this motion are germane and material to a determination of whether the termination of the Employee Plan, or the confiscation of the insurance policy cash surrender values, was lawful and what rights Plaintiff has.  The significance of a "top-hat" plan is that ERISA regulations and requirements are considerably more extensive and more stringent for non "top-hat" plans.  Plaintiff contends that the Employee Plan was not a "top-hat" plan and that over the years, management attempted to change the Employee Plan in ways that were disadvantageous to employees and tended to unilaterally divest them of benefits which had vested, all of which is contrary to ERISA.

---

[1] "Top-hat" is not found in the language of any statute or regulation but instead is the description utilized in the industry.  It refers to plans for a select group of management or highly compensated employees.  Whether the Employee Plan is a "top-hat" plan has been raised as an affirmative defense by Defendants, as those types of plans are subject to less regulation by ERISA.

**Memorandum Decision and Order - Page 4**

Filing obligations for "top-hat" plans are found at 29 C.F.R. § 2520.104-23(b). Plaintiff contends that this filing obligation for the Employee Plan was never made. The only filing that occurred, with respect to the Employee Plan, was a retroactive filing of Form 5500 to avoid penalties when the business was sold in 2002. The Form 5500 is designed to be filed by non "top-hat" plans and for "top hat" plans that failed to file under the method described in the C.F.R. section cited above. Plaintiff suspects that the Defendants' accountant made a "top-hat" filing for the separate plan for the managers/stockholders. 29 C.F.R. § 2520.104-23(b)(1) requires a "declaration that the employer maintains a plan or plans primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees and a statement of the number of such plans and the number of employees in each..." Accordingly, Plaintiff believes the accountant's file would show whether this type of filing was made for the manager/stockholder plan and if such a filing was made, it would have to state whether there were other "top-hat" plans, thus showing that neither plan was "top-hat," that both plans were "top-hat" or that only the plan for the managers was "top-hat." Plaintiff urges the accountant's file and other documents it seeks are highly relevant evidence because they may contain direct statements about one or both plans and such evidence is central to the issues in this case.

Plaintiff specifically seeks the materials redacted from Exhibit No. 24 to the Kevin Anderson deposition and requests that Defendants be required to provide any other documents, memoranda, records of any kind or nature from either Defendants, Kevin Anderson or his firm that make any kind of reference to a plan separate and apart from that which applies to Plaintiff and others similarly situated.

Defendants Lind, Lind and Johnson argue that the only plan at issue in this case is the

**Memorandum Decision and Order - Page 5**

Employee Plan as Plaintiff was an employee and a participant in that plan and they maintain that all documents related to this Employee Plan have been produced to Plaintiff. As to the "key-man" plan for stockholders/managers that Plaintiff now seeks, Defendants urge that there has been no allegations that Plaintiff was a participant in this plan and accordingly, such documents related to that plan are well beyond the scope of the Complaint. As the only "subject matter" of the lawsuit is the Employee Plan, the only matters "reasonably calculated to lead to the discovery of admissible evidence" are those directly related to the Employee Plan. *See* Fed. R. Civ. P. 26(b)(1). These Defendants argue that it is not possible for Plaintiff even to suggest that documentation related to the "key-man" plan could possibly contain any evidence relevant to the Employee Plan as even he agrees that the two plans were completely separate and did not apply to the same individuals. They also maintain the "key-man" plan is unrelated as it was discontinued when the business was sold to Defendants Jones and Davis in fall of 2002, whereas the Employee Plan was transferred to Jones and Davis and remained with Stinker Stations. The termination of the Employee Plan and transfer of the employee insurance policy cash surrender values to Stinker Station were acts Jones and Davis and occurred in 2003, well after the "key-man" plan had been discontinued. They urge this is further reason why the "key-man" plan is not relevant to the Employee Plan. Alternatively, Defendants Lind, Lind and Johnson argue that if the Court does find the "key-man" plan relevant, that the Court should consider the "confusion of the issues or misleading the jury" with the existence of two plans. *See* Fed. R. Evid. 403.

      Defendants Lind, Lind and Johnson also maintain that they have asserted the accountant-client privilege on many occasions during the deposition of Kevin Anderson and that the privilege was only waived with respect to discussing Mr. Anderson's actions on behalf of

**Memorandum Decision and Order - Page 6**

Stinker Station, through Lind, Lind and Johnson, as to the Employee Plan. Accordingly, they invoke the accountant-client privilege with respect to documentation concerning the "key-man" plan. *See* I.R.E. 515(a)(5).

Defendants Stinker Station, the Deferred Compensation Plan (the Employee Plan), Jones and Davis (collectively, "Present Owners") have responded to Plaintiff's discovery requests for information or documents related to the alleged "key-man" benefit plan that they have no knowledge of any alleged plan for the Former Owners nor do they possess any documents related to such plan. The Present Owners join in the Former Owners' opposition to Plaintiff's Motion to Compel arguing that any such "key-man" plan is irrelevant to Plaintiff's claim for benefits under the Employee Plan. They maintain that whether Plaintiff is entitled to relief is wholly dependent upon the plan in which he was a participant. Additionally, they also assert the accountant-client privilege as to any information or documents possessed by Kevin Anderson or his firm. They also argue that the factors necessary to establish a "top-hat" plan are dependent only on the nature of the Employee Plan that Plaintiff has put at issue. The existence, terms or participants of any other benefit plans is irrelevant to this issue. Plaintiff's discovery requests for the alleged "key-man" plan are also beyond the scope of discovery because they are not reasonably calculated to lead to the discovery of admissible evidence. Lastly, as the Present Owners claim to not possess any responsive information or documents to Plaintiff's discovery requests regarding the "key-man" plan, they urge they should not be subject to Plaintiff's Motion to Compel.

### III.
### Discussion

Generally, any relevant information, not privileged, that is reasonably calculated to lead

**Memorandum Decision and Order - Page 7**

to the discovery of admissible evidence is discoverable. Fed. R. Civ. P. 26(b)(1). Fed. R. Civ. P 37(a) provides that a "party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery..." The Rule also provides that if "a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Fed. R. Civ. P. 37(a)(2)(A).

First, Defendants did correctly state that the Idaho Rules of Evidence do have an accountant-client privilege which provides there is a privilege for "confidential communications" that were not "intended to be disclosed to third persons" and that were made in "furtherance of the rendition of professional accounting services to the client." I.R.E. 515(a)(5). However, Fed. R. Evid. 501 provides the rules of privilege should be in accordance with state law only when state law supplies the rule of decision with respect to an element of a claim or defense. As this is an ERISA case, state law would not supply the rule of decision and accordingly, Idaho law regarding privileges does not govern here. Federal law does not recognize an accountant-client privilege. *Couch v. United States*, 409 U.S. 322, 334 (1973). Defendants' argument that the documents Plaintiff seeks are protected by the accountant-client privilege is unsuccessful.

Next, the relevancy of the documents and information Plaintiff seeks is dependant upon what a "top-hat" plan is, how it is determined if a plan is a "top-hat" plan, and what the effects of having such a plan are. ERISA defines a "top-hat" plan as "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1051(2). *See also* 29 U.S.C. §§ 1081(a)(3), 1101(a)(1). "Top-hat" plans are subject to ERISA's administrative and enforcement provisions, but exempt from the substantive provisions that regulate vesting,

**Memorandum Decision and Order - Page 8**

participation, funding and impose fiduciary duties.  *Garratt v. Knowles*, 245 F.3d 941, 946 (7th Cir. 2001).  *See also In re IT Group, Inc.*, 448 F.3d 661, 664 (3d. Cir. 2006).  The reason behind exempting such plans from certain ERISA requirements is that top-level management, unlike most employees, are capable of protecting their own pension expectations.  *Gallione v. Flaherty*, 70 F.3d 724, 727 (2d Cir. 1995).  Only the Sixth Circuit appears to have addressed the factors to consider in determining whether a plan qualifies as a "top-hat" plan.  *Bakri v. Venture Mfg. Co.*, 473 F.3d 677, 678 (6th Cir. 2007).  In that case, the court stated:

> In determining whether a plan qualifies as a top hat plan, we consider both qualitative and quantitative factors, including (1) the percentage of the total workforce invited to join the plan (quantitative), (2) the nature of their employment duties (qualitative), (3) the compensation disparity between top hat members and non-members (qualitative), and (4) the actual language of the plan agreement (qualitative).

*Id*.

The Court finds that documents relating to the deferred compensation plan for Lind, Lind and Johnson do not need to be produced as they are not relevant to this litigation.  This case revolves around the Employee Plan that Roberts was a participant in and this other "key-man" plan has no bearing on it.  These two plans were separate and apart.  Documents pertaining to the purported "key-man" plan have no relevance in determining whether the Employee Plan was or was not a "top-hat" plan.  The protection ERISA would afford Roberts would be determined by the type of plan he was in, not by the other types of plan that may have existed.  There is no law that directs the Court to look at other deferred compensation plans to determine whether the one in question is a "top-hat" plan.  As to Plaintiff's argument about the filing requirement for "top-hat" plans, even if a filing was done on behalf of the separate "key-man" plan, whether the Employee Plan was also listed as a "top-plan" in this filing would not be determinative of

**Memorandum Decision and Order - Page 9**

whether it is in fact a "top-hat" plan.  The only factors to consider in making this determination involve the plan in question.  *See Bakri v. Venture Mgf. Co.*, 473 F.3d 677 (6th Cir. 2007).

## **ORDER**

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1) Plaintiff's Motion to Compel Discovery (Docket No. 26), filed December 19, 2006, be DENIED.



DATED: February 23, 2007

_____
Honorable Mikel H. Williams
United States Magistrate Judge

**Memorandum Decision and Order - Page 10**