UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| TED ROBERTS,<br><br>  Plaintiff,<br><br>  -vs-<br><br>FEARLESS FARRIS SERVICE STATIONS, INC., an Idaho Corporation; THE FEARLESS FARRIS SERVICE STATION, INC. DEFERRED COMPENSATION PLAN, FARRIS S. LIND,  KENT F. LIND, H. KENT JOHNSON, CHARLEY JONES, and SHAWN DAVIS, individually and as Present or Former Administrators and Fiduciaries of the Fearless Farris Service Stations, Inc.<br><br>  Defendants. | NO.   CIV 05-472-S-WFN<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

A two day bench trial was held beginning on January 28, 2008. Robert Huntley and Jeffrey Mandell represented the Plaintiff; Candy Dale represented Fearless Farris Service, Charley Jones and Shawn Davis; and Glenda Talbutt and Michael Brady represented Farris Lind, Kent Lind and Kent Johnson. The following constitutes the Court's Findings of Fact and Conclusions of Law which are based on the testimony and exhibits received into evidence and the briefing of the parties.

**FINDINGS OF FACT**

Plaintiff alleges Defendants violated several provisions of ERISA in their creation, maintenance, and termination of the Fearless Farris Service Station, Inc. Deferred Compensation Plan [Plan]. Plaintiff was employed by Westpoint Transport [Westpoint], a wholly owned subsidiary of Fearless Farris Service Stations, Inc. [Fearless Farris]. At all

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 1

relevant times prior to and including November 18, 2002, Defendant Fearless Farris was owned by Farris S. Lind, Kent F. Lind, and H. Kent Lind [Sellers].  At all relevant times after November 18, 2002, Fearless Farris was owned by Defendants Charley Jones and Shawn Davis [Buyers].

In February, 1981, Plaintiff became employed at Westpoint as a truck driver.  As a full-time employee, Plaintiff was selected to participate in the Plan.  After 22 consecutive years of employment, the Buyers terminated Plaintiff on August 18, 2003. He was 48 years old.

In approximately 1982, the Executive Committee of Fearless Farris created the Plan. Fearless Farris served as Plan sponsor and Plan administrator.  H. Kent Johnson was a member of the Executive Committee, and later an owner, until the sale in November, 2002. Participating employers in the Plan included Fearless Farris Wholesale, Inc. [Wholesale], Westpoint, and Fearless Farris Stinker Stations, Inc.  The parties agree that the Plan is subject to ERISA.

The Plan consisted of letters and memoranda distributed to Plan participants over the years.  Prior to 2002, Fearless Farris did not consult legal or financial counsel when Fearless Farris instituted, amended, or maintained the Plan. The Executive Committee, which included all officers of Fearless Farris, made all decisions regarding the Plan until the sale on November 18, 2002.

The Plan underwent several changes over the years.  Initially, the Plan "would pay [Participants] $500.00/month for 15 years after [Participant's] retirement at age 65." In 1984, the Executive Committee revised the Plan to increase the amount of compensation to $600 per month for 15 years when the employee reached age 65.  The Executive Committee also included benefits to the employee's beneficiary in event of death. In late 1990, the Executive Committee amended the Plan again, this time adding life insurance and altered compensation to $9,000 per year for 15 years or $1,500 per month for the employee's beneficiary if the

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 2

employee pre-deceased retirement. The 1991 revision increased the annual compensation to $9,600. The memorandum also clarified that to "qualify for the plan, the employee must be fully employed in any of the following categories: maintenance, freight drivers, supervisors or staff" and that full-time employment must have been for at least three years. It listed Plaintiff as a participant in the Plan.

The Executive Committee made their final revision in 1995. This iteration of the Plan governs the terms of the Plan applicable to Plaintiff. The Plan provided in part:

> The Company is continuing to invest money for you to assist you in your retirement. As you recall, this costs you nothing, except your dedication and loyalty to our Company.
>
> Fearless Farris Deferred Compensation Plan will pay to the qualified employee or his surviving beneficiary, upon reaching the retirement age of 65 and having completed a minimum of 20 years of service to the Company a monthly sum of 25% of the average of his/her last 5 years of service for a period of 15 years. In the case of the employee pre-deceasing the retirement age of 65 years, but still meeting the 20 year service requirement, the Company will pay to the surviving beneficiary 50% of the employee's last 5 year average income, paid monthly for 15 years.

The 1995 version of the Plan included an example page which anticipates a 10% divestment for each year that the employee retires prior to age 65. The example page did not include what would happen in the event of termination prior to age 65.

The Plan included full-time employees in positions across the companies except for the service stations. Participants in the Plan included administrative staff, payroll clerks, truck drivers, and maintenance personnel. Their annual salaries ranged from approximately $22,000 to $85,000. Most of these employees lacked negotiating power within the company. Plaintiff's and Mr. Jones' testimony supports this conclusion. Despite Plaintiff's repeated meetings with Mr. Johnson and Mr. Jones in his role as an unofficial spokesman for the truck drivers, his concerns and requests regarding the Plan were not implemented.

During the last days of Seller's ownership of Fearless Farris, required Form 5500 filings for 1990 - 2002 were made to the Internal Revenue Service by Wholesale concerning the

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 3

Plan. These Form 5500 filings identified the Plan sponsor and administrator as Wholesale. Schedule P to these filings identified the Plan trustee/custodian as Wholesale. Mr. Johnson signed the returns as an officer on behalf of Wholesale.

Though the Plan was unfunded, the Sellers established a funding mechanism upon creation of the Plan. Beginning in 1982, Fearless Farris purchased and maintained a life insurance policy upon each employee participating in the Plan. During the Sellers' ownership of Fearless Farris, Fearless Farris was the owner and beneficiary of these life insurance policies. Fearless Farris paid all policy premiums. Mr. Johnson testified that it was the Executive Committee's intent to use proceeds of the insurance policies to pay for benefits under the Plan. Prior to the sale, Sellers pledged the insurance policies as collateral for a loan. The sale transferred the life insurance for all non-owner Plan participants to Buyers. After the sale, Buyers unencumbered the policies, then surrendered the insurance policies for their combined cash surrender value, in excess of $600,000, placing the funds in the corporate accounts of Fearless Farris.

The Sellers established their commitment to honoring the terms of the Plan. The Court found Mr. Johnson's testimony that the Executive Committee intended to continue the Plan and would have paid benefits pursuant to the 1995 Plan to be very credible. To illustrate this commitment, Mr. Johnson testified that Fearless Farris was providing benefits to Bob Belliveau, a Plan participant pursuant to the 1995 Plan. Additionally, Mr. Johnson testified that the Executive Committee opted to sell to Mr. Jones and Mr. Davis due to the latter's familiarity with the business and the Committee's perception that the Buyers would do right by the employees. After the sale, he attempted to intervene when he felt Mr. Jones had interferred with an employee's right to benefits.

Charshaw, Inc., Davis-Jones, Inc., and Joshnik LLC purchased the stock and assets of Fearless Farris Service Stations, Inc, and Fearless Farris Wholesale, Inc., and its subsidiary entities effective November 18, 2002. Charley Jones and Shawn Davis became the sole

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 4

shareholders and owners of Fearless Farris and its subsidiaries. Charley Jones serves as President and Treasurer for all corporate entities mentioned above; Shawn Davis serves as Vice-President and Secretary for all corporate entities mentioned above.

As of November 18, 2002, all involvement, control, authority, and/or responsibility for the Plan remained with Fearless Farris and its affiliates. Except for a few non-business assets not relevant to this inquiry, the Stock Asset and Purchase Agreement [Agreement] transferred all assets and liabilities of Fearless Farris. Though the Agreement did not directly address the Plan, Mr. Jones testified that he was aware of the Plan and its contours based on his due diligence performed prior to the sale. Also, Mr. Johnson testified that prior to the date of the sale of Fearless Farris, Sellers specifically told Buyers of their desire that the Plan participants be taken care of by Buyers and that all obligations of Fearless Farris to the Plan participants be met.

In July, 2003, Mr. Jones and Mr. Davis held meetings and distributed a memorandum informing some Plan participants that the Plan was terminated for those employees not within 5 years of retirement and that all participants should not expect to receive any benefits promised under the Plan. Though called a "termination" some participants benefitted from an altered plan, while others near retirement received benefits under the Plan. The corporate structures owning the assets previously owned by Fearless Farris and its affiliates have changed hands since alteration of the Plan, but Westpoint is still viable and is owned by Stinker Stores which is under the joint control of Mr. Davis and Mr. Jones. Westpoint is responsible for making payments of benefits under the Plan. Plaintiff signed an acknowledgment of his receipt of the purported termination of the Plan. His testimony is credible that by signing the acknowledgment he did not agree that the company had a right to divest him of his benefits.

Mr. Jones, in consultation with Mr. Davis, exercised control over the Plan making all decisions relative to its existence and terms. In his testimony, Mr. Jones indicated that he

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 5

1 made all the decisions, but did not seem to do so in his corporate officer capacity. He signed
2 the termination notice without reference to his relationship to the corporation.

3 The Plan, according to the 1995 modification, delineates the contours of Plaintiff's
4 benefits. The parties agree that Plaintiff's average compensation over the last five calendar
5 years was $47,443.07. According to the 1995 modification, Plaintiff's benefits will be 25%
6 of his average compensation. Upon reaching the age of 65, Plaintiff is due $988.40 per month
7 for fifteen years. If Plaintiff pre-deceases retirement age of 65, his surviving beneficiary will
8 be owed 50% of his average wage for 15 years, or $1976.79 per month.

## CONCLUSIONS OF LAW

### 1. The Plan Was Not a "Top-Hat" Plan.

A "top hat" plan is defined as a "plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). Additionally, the employees involved must "have sufficient influence within the company to negotiate compensation agreements that will protect their own interests where ERISA provisions do not apply." *Guiragoss v. Khoury*, 44 F. Supp. 2d 649 (E.D. Va. 2006) (also see Ct. Rec. 80). The employer has the burden of demonstrating that the plan is a "top hat" plan. *See, e.g., Alexander v. Brigham & Women's Physicians Org., Inc.*, 467 F. Supp. 2d 136, 142 (D. Mass. 2006).

The Defendants failed to prove that the Plan was completely unfunded; however, this factor is not decisive. Though it is undisputed that no funds were set aside in trust for the Plan, Mr. Johnson credibly testified that the Executive Committee intended to fund the Plan with the insurance policies. According to Mr. Johnson, the death benefits were higher than the pension benefits due to the larger payout in the event of a premature death. Conforming the Plan to the insurance policy payout reflects the intent to tie the proceeds of the insurance policies to the Plan.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 6

1       Participants were not "a select group of management or highly compensated employees." The evidence shows that the participants were long term employees who earned various amounts, but most, if any, were not highly compensated. Neither were they all or mostly management. Defendants attempt to argue that the participants were "key" due to their role in the company and thus meet this prong. However, employees who are not highly compensated or management do not meet the standard set in the statute.

      Participants did not have the ability to negotiate an agreement that protected their own interests. Most participants lost all benefits when the Plan was terminated, they did not receive any compensation or any other advantage in exchange for the loss of this substantial benefit. Plaintiff attempted to negotiate, but was unable to secure a better deal. In fact, he lost benefits.

**2. <u>ERISA Entitles Plaintiff to All Vested Benefits.</u>**

      Interpreting the Plan to comply with 29 U.S.C. §1053, Plaintiff's rights in the Plan vested and he is entitled to his full benefit upon attainment of age 65. Though the requirement of 20 year vesting violates ERISA, this is immaterial because Plaintiff met this Plan requirement. Once an employee satisfies 7 years of service, their right to their normal retirement benefit is nonforfeitable. 29 U.S.C. §1053(a)(2)(A)(iii). Since Plaintiff seeks payment of his benefits beginning upon attainment of age 65, he is not subject to divestment for early retirement.

**3. <u>Defendants Fearless Farris Service Stations, Farris S. Lind, Kent F. Lind, H. Kent Johnson, Charley Jones and Shawn Davis Are All Fiduciaries</u>**.

      ERISA "provides a functional definition of a fiduciary which depends, in part, upon whether a person 'exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . ." *Kayes v. Pacific Lumber Co.,* 51 F.3d 1449, 1459 (9th Cir. 1995). Even where a corporate officer or director is acting on behalf of a corporation, they

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 7

can be "liable as fiduciaries on the basis of their conduct and authority with respect to ERISA plans." *Id.* As the Plan sponsor and administrator, Fearless Farris Service Stations, Inc. is liable as a fiduciary. The Sellers each sat on the Executive Committee which exercised complete authority over the Plan making them fiduciaries. The Buyers, especially Mr. Jones, exercised complete authority over the Plan once the business was transferred making them fiduciaries starting in November, 2002.

Though Sellers breached their fiduciary duties by failing to follow ERISA requirements in creation and maintenance of the Plan, no damages arose from their failure. Sellers purchased and maintained insurance policies to fund the Plan. Sellers transferred the policies, albeit encumbered, to Buyers. Sellers should have procured a more firm provision in the Agreement addressing the Plan, but since Buyers were aware of the Plan and its provisions, Sellers' failure did not cause Plaintiff harm. Further, Sellers demonstrated their intent to provide benefits to Plan participants through both actions and words. When Sellers sold the companies, they no longer exercised control over the Plan; therefore, they cannot be liable for Buyers' breaches of fiduciary duty.

Buyers and Fearless Farris breached their fiduciary duties by failing to follow ERISA requirements in maintenance and termination of the Plan. Unlike Sellers' violations, these violations deprived Plaintiff of his vested rights in the Plan.

## CONCLUSION

Based on the foregoing, Defendants Fearless Farris, Charley Jones, Shawn Davis, and Fearless Farris Inc. Deferred Compensation Plan are liable to Plaintiff for his vested benefits under the Plan. Accordingly,

**IT IS ORDERED** that:

1. Defendants Fearless Farris, Charley Jones, Shawn Davis, and Fearless Farris Inc. Deferred Compensation Plan shall **CREATE AND FUND AN ANNUITY** which guarantees Plaintiff's rights under the Plan. The annuity shall provide Plaintiff with $988.40 per month

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 8

for fifteen years upon reaching age 65.  If Plaintiff predeceases the retirement age of 65, Defendants Fearless Farris, Fearless Farris Inc. Deferred Compensation Plan, Charley Jones and Shawn Davis shall provide the surviving beneficiary $1,976.79 per month.

2.  Defendants Fearless Farris, Charley Jones, and Shawn Davis shall pay Plaintiff's reasonable attorney's fees and costs pursuant to 29 U.S.C. §1132(g).

The Clerk of the Court is directed to:

- File this Order,
- Provide copies to counsel, and
- Enter a judgment consistent with this Order.

**DATED** this 6th day of February, 2008.

02-06

                        s/ Wm. Fremming Nielsen
                        WM. FREMMING NIELSEN
          SENIOR UNITED STATED DISTRICT JUDGE

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 9